UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERMAN TUGGLE,

                    Plaintiff,               No. 05-CV-73208-DT

vs.                                     Hon. Gerald E. Rosen

GREEKTOWN CASINO, LLC, and
HOTEL EMPLOYEES AND RESTAURANT
EMPLOYEES UNION, LOCAL NO. 24,

                    Defendants.
_____/

MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     February 28, 2007

PRESENT:  Honorable Gerald E. Rosen
                  United States District Judge

## I. INTRODUCTION

Plaintiff Herman Tuggle filed this hybrid Section 301 breach of contract/breach of

duty of fair representation Complaint challenging the termination of his employment in

Wayne County Circuit Court on January 7, 2005.   Defendants Greektown Casino, LLC

and the Hotel Employees and Restaurant Employees Union, Local No. 24 (the "Union")

timely removed the action to this Court on August 18, 2005.  After the close of discovery,

on March 31, 2006, each of the Defendants filed a motion for summary judgment on

1

various substantive and procedural grounds.  Plaintiff did not respond to either of the

Defendants' motions until July 6, 2006, after the Court denied his untimely motion for

leave to file an amended complaint and less than one month before the then scheduled

trial date.  Despite the untimeliness of Plaintiff's Response, the Court will consider it,

along with Defendants' replies thereto.

Having reviewed and considered the parties' briefs and supporting documents and

the entire record of this case, the Court has determined that oral argument is not

necessary.  Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this

matter will be decided on the briefs.  This Opinion and Order sets forth the Court's ruling.

## II.  <u>FACTUAL BACKGROUND</u>

Plaintiff Herman Tuggle was hired by Defendant Greektown Casino, L.L.C.

("Greektown") in October 2000 as an "EDS attendant," doing custodial work in the

environmental services department.  He was subsequently re-classified to the position of

"EVS lead" in the same department, where he worked with several female co-workers

under the supervision of  Sheila Blanchard.

On October 14, 2002, Greektown fired Tuggle for "violation of Greektown Casino

policy # 1611, sexual harassment."  That same day his supervisor, Blanchard, reported

that Tuggle threatened her and the female co-workers who had complained about him.

According to Tuggle, following his discharge, his Union provided him with a

grievance form, which he signed and which the Union thereafter filed on his behalf.

Tuggle also spoke with a Union representative, Terry McCabe, who told Tuggle that he

was "looking into the matter."

On October 23, 2002, Tuggle attended a grievance meeting with Greektown, along with Union representatives McCabe and Juanita Johnson.  At this meeting, Greektown reviewed the complaints against Tuggle.  Tuggle  denied the allegations, but offered no explanation as to why his co-workers would make allegedly false complaints about him. Tuggle's grievance was denied.

On December 10, 2002, Tuggle's attorney wrote a letter jointly addressed to the Union and Greektown.. Tuggle's attorney asserted in that letter that Greektown had "wrongfully terminated" Tuggle and that his Union had not "met [its] duty to fairly represent him."  Terry McCabe subsequently spoke on the phone with Tuggle's attorney on December 30, 2002, and advised that he was continuing to investigate the allegations against Tuggle and that the Union was going to meet with Tuggle to decide whether to arbitrate his grievance.[1]

Then, on January 3, 2003, Tuggle's attorney wrote a second letter to the Union asking for copies of the coworkers' statements against Tuggle and complaining about not being permitted to attend the Union's upcoming internal meeting with Tuggle.  On January 9, 2003, McCabe sent Tuggle's attorney a letter responding his request for records and sent him copies of the co-workers statements.  McCabe's letter noted that he had interviewed each of the co-workers who had complained about Tuggle and that

---

[1]  Greektown responded to the letter from Tuggle's attorney on January 2, 2003, rejecting his assertions and inviting the attorney to contact Greektown's legal counsel.

Tuggle had had very little to say for himself at the October 23 grievance meeting with the Union and Greektown officials.

Tuggle, who also received a copy of McCabe's January 9, 2003 letter, thereafter spoke with McCabe about the upcoming meeting, which had been scheduled for January 13, 2003.  Tuggle recalls that McCabe urged him to attend the meeting, which Tuggle did. [*See* Plaintiff's Dep., pp. 14, 37-38.]   At the meeting, Tuggle's grievance was reviewed by a panel of Union officers and staff.  Tuggle recalls that one of the Union panelists commented that it was unlikely that Tuggle's co-workers (who Greektown refers to as "Team Members") would change their statements against him. *Id.* at 31. Tuggle left that meeting with the sense that the Local would not pursue his grievance any further. *Id.* at 32.

After the meeting Tuggle received a letter dated January 13, 2003 from his Union informing him that his grievance would not be arbitrated:

> Please be advised that the Union will not pursue the grievance further to the arbitration procedure. The Arbitration Panel has determined that the Team Members' statements, which allege sexual harassment, were certainly damaging. Moreover, in their interviews with me, each Team Member independently corroborated what she had written.

*See* Union  Ex. 9.

Tuggle testified in his deposition that understood the January 13, 2003 letter meant that Local 24 "wasn't going any further" with his grievance. [Plaintiff's Dep., p. 29.]  The letter was his final communication with the Union and "the last thing that happened." *Id.* at 40.  After that date, Tuggle received nothing further from the Union; sent nothing to the

Union; and spoke with no one at the Union. *Id.* at 38-40. Neither did his attorney. [*See* Scott Smith Dep. pp. 18-22].

Two years later, on January 7, 2005, Tuggle filed a complaint in the Wayne County Circuit Court asserting that Greektown had discharged him in violation of the collective bargaining agreement and that his Union had breached its duty of fair representation in connection with this discharge. However, the summons that accompanied that complaint was not served on the Union pursuant to Michigan law during the 91 days of its existence between January 7, 2005 and April 8, 2005. In July, 2005, Tuggle's counsel filed a Motion to Re-issue Summons dated July 1, 2005, which the Wayne County Circuit Court granted on July 29, 2005. On August 5, 2005, the Union was "served" with a copy of the state court complaint and the re-issued summons.

On August 17, 2005, the Union asked Tuggle to dismiss the case against it on the grounds that the summons was defective and the case was time-barred. Ex. 14. The same day the Union removed the matter to this Court. Greektown concurred in the removal.

On October 17, 2005, the Court conducted a pre-trial scheduling conference with counsel for the parties. At this pre-trial conference, the Union reiterated its position that the claim against Local 24 should be dismissed. The Court gave Tuggle until November 15, 2005 to decide whether to voluntarily dismiss the case, move to amend the complaint, or attempt to proceed with the action. [*See* Affidavit of Attorney Renate Klass.] The Court also informed counsel for the parties that if a summary judgment motion was filed, it would be reviewed after discovery closed. *Id.* The parties were also instructed to file

5

their preliminary and final witness lists by February 14, 2006 and March 14, 2006, respectively, and to file any dispositive motions by March 31, 2006. *Id;* 10/17/05 Scheduling Order. Tuggle did not voluntarily dismiss this case and did not timely move to file an amended complaint.[2] Nor has Tuggle filed any witness lists.

On March 30 and 31, 2006, Defendants filed the instant motions for summary judgment. Both Defendants argue that Plaintiff's Complaint is time-barred under the *DelCostello*[3] six-month statute of limitations applicable in Section 301 actions. Defendants also move for summary judgment on the merits of Plaintiff's claim and on procedural grounds for failure to comply with the Court's Scheduling and discovery Orders.

---

[2]  Plaintiff did not file a motion to amend his complaint until May 31, 2006, i.e., more than eight months after the deadline set by the Court for doing so and more than three months after discovery closed and two months after dispositive motions filed. The Court denied Plaintiff's motion on June 8, 2006.

[3]  *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151 (1983).

III.  DISCUSSION

A.  STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the standards of review for a summary judgment motion.  These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[4]  According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment.  They are summarized as

---

[4]"Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials."  10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure, § 2727, at 35 (1996 Supp.).

7

follows:

> * The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

> * The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

> * The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

> * The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996). *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The Court will apply these standards in deciding Defendants' motions for summary judgment in this case.

B.    PLAINTIFF'S COMPLAINT IS TIME-BARRED

Plaintiff Tuggle has pled in his Complaint a cause of action against his former employer, Greektown, based upon his employer's alleged breach of the collective bargaining agreement which governed Plaintiff's employment. He has also pled a claim of breach of duty of fair representation against his Union for failing to arbitrate his grievance challenging his termination. It is, therefore, clear that Plaintiff's Complaint is a

hybrid claim under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

The six-month period of limitations set forth in Section 10(b) of the National Labor Relations Act applies to hybrid § 301 actions. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281 (1983); *Smith v. General Motors Corp.*, 747 F.2d 372 (6th Cir. 1984); *Jones v. General Electric Co.*, 87 F.3d 209, 211-12 (7th Cir.1996). A hybrid § 301 cause of action accrues not on the date that the plaintiff was actually injured (his discharge date), but rather from the time a final decision on the plaintiff's grievance has been made, or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance. *Schoonover v. Consolidated Freightways Corp.*, 49 F.3d 219, 221 (6th Cir. 1995); *Jones v. General Motors Corp.*, 939 F.2d 380, 384 (6th Cir. 1991); *Chapple v. National Starch and Chemical Co. and Oil*, 178 F.3d 501, 505 (7th Cir. 1999) (citing *DelCostello*, 462 U.S. at 155, 172, 103 S.Ct. 2281).

In this case, the Union sent Plaintiff a letter on January 13, 2003 which explicitly stated "please be advised that the Union will not pursue the grievance further through the grievance procedure." *See* Union Ex. 9. Tuggle testified at his deposition that he understood that this was the end of his case:

> Q:    And what did you understand that to mean?
>
> A:    Sound like they wasn't going any further with it.
>
> Q:    Right, they were not going any further with it, correct?

9

A:      Right.

Q:      So, when you received this letter you understood that, right?

A:      Yeah.

[Plaintiff's Dep., p. 29.]

Although he could not precisely recall when exactly he received this letter, Tuggle

admitted that he received it "in 2003," *Id.*   However, it was not until January 7, 2005, --

nearly two years after the January 13, 2003 meeting and long after the six-month

*DelCostello* statute of limitations had expired -- that Plaintiff filed this action.   Plaintiff's

complaint, therefore, is time-barred.[5]

<u>CONCLUSION</u>

For the reasons stated above,

IT IS HEREBY ORDERED that Defendants' Motions for Summary Judgment be,

and hereby are, GRANTED.

---

[5]  Having determined that Plaintiff's Complaint is time-barred, it is unnecessary for
the Court to address Defendants' arguments for summary judgment on the merits of the
claims or on the basis of procedural non-compliance.

IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED, in its

entirety, WITH PREJUDICE.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  February 28, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record
on February 28, 2007, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager